UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| TERRY JOE ROBERTS, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-00004-SRC |
| | ) | |
| SECC DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendant(s). | ) | |

**Memorandum and Order**

This matter comes before the Court on review of plaintiff Terry Joe Roberts's first

amended complaint pursuant to 28 U.S.C. § 1915A.  For the reasons discussed below, the Court

denies as moot Roberts's motion to proceed in forma pauperis.  The Court likewise denies

Roberts's motion for transfer.  And while the Court dismisses Roberts's claims against

defendants SECC Department of Corrections, Unknown Hood, Unknown Womack, Unknown

Maron, and Unknown Robinson, Roberts's claim against defendant Brunelle for excessive force

and his claims of First-Amendment retaliation against defendants Reeves and Crass are sufficient

for purposes of § 1915A review.  The Court directs process to issue on these claims.

## I.    Background

Roberts is currently incarcerated at the Southeast Correctional Center in Charleston,

Missouri.  In January 2022, Roberts filed this pro se civil lawsuit.  Doc. 1.  Because Roberts's

allegations were conclusory and failed to explain how any particular defendant personally

violated his constitutional rights, the Court ordered Roberts to amend his complaint and set forth

his allegations in accord with Federal Rules of Civil Procedure 8 and 10.  Doc 2.  The Court also

directed Roberts to either pay the full filing fee of $402 or file a motion to proceed in forma

pauperis.  *Id.*  Roberts first moved to proceed in forma pauperis and then paid the $402 filing fee.

Accordingly, the Court denies as moot Roberts's motion to proceed in forma pauperis.  Roberts

then filed his first amended complaint, Doc. 3, and later, two supplements, Docs. 13, 15.

Roberts's first amended complaint alleges violations of his civil rights.  Doc. 3.  Roberts

sues:  Correctional Officer Shawn Brunelle; Correctional Officer Unknown Crass; Correctional

Officer Unknown Maron; Correctional Officer Unknown Hood; and SECC Department of

Corrections.  Additionally, in the body of his first amended complaint, as well as in the

supplements to his first amended complaint, Roberts also names as defendants Lieutenant

Unknown Reeves, Correctional Officer Unknown Womack, and Correctional Officer Unknown

Robinson.  Roberts sues the individual defendants in their individual capacities only.

Roberts alleges that states that he is "[t]ransgender" and currently incarcerated at

Missouri's Southeast Correctional Center.  *Id.* at p. 2.  He claims that on August 7, 2021,

Lieutenant Reeves woke him up for purported possession of a plastic spork with a broken handle

sharpened into a point.  *Id.* at p. 3.  Roberts states that Lieutenant Crass claimed to have found

the "spork knife" outside of his cell.  Although Roberts asserts that he had never seen the "spork

knife" before, Roberts was given a conduct violation for being in possession of a knife and drug

paraphernalia.  *Id.*  Roberts claims that "both officers" told him afterwards, "This is what you get

for filing a false Prison Rape Elimination Act[, expletive]!"  *Id.*

Roberts states that later that afternoon, Brunelle slammed him against the sally-port

windows and then "body slammed" him in the hallway.  *Id.* at pp. 3, 9.  Roberts claims that

Hood, Brunelle, Womack, and Crass "all had this planned because I filed a Prison Rape

Elimination Act [complaint] against another inmate who was their favorite worker.  And they

hate Transgenders or anyone who's LGBTQ+."  *Id.* at p. 3.

Although Roberts does not indicate who he allegedly asked for medical care, he claims:

> They refused [him] any X-ray or medical exam whatsoever.  Called me a
> '[expletive].'  My right hip still hurts to this day.  And it jarred teeth on my bottom
> left side and chipped them too.  4 teeth!!

*Id.* at p. 4.

Roberts next alleges that on September 28, 2021, he asked for medical, and Brunelle refused him treatment.  *Id.*  Roberts does not indicate what medical issues he was having such that he asked to "see medical."

Roberts then claims that on September 29, 2021, Brunelle searched his cell about two hours after Roberts filed a Prison Rape Elimination Act complaint against Brunelle for saying, "Nice bra – [expletive]."  *Id.*  The next day, Brunelle came to Roberts's cell door and stated, "Hey [expletive], is your celly [having sex with] you or what [expletive]?"  *Id.*  Later that same day, Brunelle asked Roberts and obscene question.  *Id.*  Roberts states that he filed another Prison Rape Elimination Act complaint against Brunelle later that day.  *Id.*  Roberts says he began to fear Brunelle.  *Id.*

Roberts alleges that on October 6, 2021, he overheard Brunelle tell Correctional Officer Robinson that Roberts was the transgender "[expletive]" that filed a Prison Rape Elimination Act complaint against him.  *Id.*  Nurse Emily witnessed the conversation between the two officers. *Id.*  Roberts claims that the additional harassment pushed him closer to suicide.  *Id.*

Roberts states that on October 8, 2021, Correctional Officer Crass asked him whether he wanted to file another Prison Rape Elimination Act complaint and deal with Brunelle again.  *Id.* Roberts claims that Crass then spit in his dinner tray.  *Id.*

Roberts claims that on October 13, 2021, Brunelle came to his cell to get his cellmate for X-rays.  Brunelle allegedly handcuffed Robert's cellmate but then told Roberts, "Get [expletive]

in the back of the cell." *Id.*  Roberts alleges that he feared Brunelle would assault him again.  *Id.*
Roberts asserts that, within a month, due to the mental abuse, sexual comments, verbal threats,
physical assault, and denial of medical treatment, he tried to commit suicide while on suicide
watch.  *Id.*

On May 26, 2022, Roberts filed a "sworn statement," as a supplement to his first
amended complaint.  Doc. 13.  In his supplemental complaint, Roberts asserts that various
officers at Southeast Correctional Center have discriminated and retaliated against him due to his
alleged transgenderism and for filing Prison Rape Elimination Act complaints.  *Id.* at p. 1.  He
asserts that these officers have denied him food, called him names, spit in his food, assaulted
him, stirred gossip with other offenders and failed to place him in a "reclusive shower."  *Id.*
Roberts also states that on May 18, 2022, Correctional Officer Unknown Robinson wrote him up
for medication outside of his cell that did not belong to him.  *Id.* at p. 2.  Roberts complains that
Robinson also gave him a meal with half of the food missing.  *Id.* at p. 1.

On June 6, 2022, Roberts filed a second supplement to his first amended complaint.  Doc.
15.  In this supplement, Roberts complains that Robinson, who works in 2 House, calls him
names, such as "faggot, bitch, freak," and has made unspecified "threats of assault."  *Id.* at p. 1.
Roberts asserts that on May 30, 2022, Robinson came to feed him dinner and stated, "Here's
your food [expletive].  I took your peanut butter out of your bag, starve [expletive]."  *Id.*  Roberts
claims that he fears correctional officers will continue to fabricate conduct violations to keep him
in solitary confinement.  *Id.* at p. 2.

Roberts seeks money damages and injunctive relief.  Doc. 1 at p. 5.

II.     **Standard**

Under 28 U.S.C. § 1915A, the Court must review a civil complaint "in which a prisoner

seeks redress from a governmental entity or officer or employee of a governmental entity."  28

U.S.C. § 1915(A)(a).  The term "prisoner" refers to "any person incarcerated or detained in any

facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations

of criminal law."  28 U.S.C. § 1915A(c).  The Court must dismiss a complaint if it "is frivolous,

malicious, or fails to state a claim upon which relief can be granted," or if it "seeks monetary

relief from a defendant who is immune from such relief."  28 U.S.C. § 1915(A)(b).  Here,

Roberts, a convicted state prisoner, sues employees of a governmental entity; therefore, the Court

must screen Roberts's first amended complaint in accordance with 28 U.S.C. § 1915A.

To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more

than a "mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.

Determining whether a complaint states a plausible claim for relief is a context-specific task that

requires the reviewing court to draw upon judicial experience and common sense.  *Id*. at 679.

The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements."  *Barton v. Taber*,

820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371,

372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true but

is not required to "accept as true any legal conclusion couched as a factual allegation").

### III.    Discussion

Roberts brings this civil action pursuant to 42 U.S.C. § 1983, alleging that defendant Brunelle used excessive force against him in violation of the Eighth Amendment.  Roberts also claims that defendants Hood, Brunelle, Womack, and Crass conspired to violate his civil rights because he filed several Prison Rape Elimination Act complaints.  Roberts alleges that defendants Reeves, Crass and, Robinson issued him retaliatory conduct violations in violation of the First Amendment.  Roberts also asserts that Brunelle was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Roberts finally claims that he was subjected to unlawful conditions of confinement in violation of the Eighth Amendment by defendants Brunelle, Maron, Hood, Crass, and Robinson when they spit in his food, denied him meals, and verbally harassed him.

After review under 28 U.S.C. § 1915A and for the reasons discussed below, the Court issues process on Roberts's claims against Brunelle for excessive force and on Roberts's claims against Reeves and Crass for allegedly assessing retaliatory discipline against Roberts in violation of the First Amendment.  However, the Court dismisses Roberts's remaining claims.

### A.    Claims against SECC Department of Corrections

Roberts sues an entity he calls the "SECC Department of Corrections."  The Court assumes Roberts intends to refer to the Missouri Department of Corrections.  Claims brought against the Missouri Department of Corrections are claims brought against the State of Missouri.  However, the State of Missouri is not a "person" for purposes of a § 1983 claim.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) ("[A] State is not a person under § 1983").  For this reason, the Court dismisses Roberts claim against the "SECC Department of Corrections."

6

### B.     Individual-capacity claims

#### 1.     Excessive-force claim

Roberts asserts that on the afternoon of August 7, 2021, Brunelle slammed him against

the sally-port windows in the 2 House A-B sally-port hallway.  Roberts also alleges that Brunelle

"body slammed" him in the hallway of the sally port.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" which

constitutes cruel and unusual punishment.  *Hudson v. McMillan*, 503 U.S. 1, 9–10 (1992); *see*

*also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014) ("After incarceration, only the

unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by

the Eighth Amendment.").  When a prison official is accused of using excessive physical force in

violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017); *see also Ward v. Smith*, 844 F.3d 717,

721 (8th Cir. 2016) ("Because the use of force is sometimes required in prison settings, guards

are liable only if they are completely unjustified in using force, i.e., they are using it maliciously

and sadistically.").  The factors to be considered in determining whether force was used in good

faith include "the need for the application of force, the relationship between the need and the

amount of force that was used, and the extent of injury inflicted."  *Whitley v. Albers*, 475 U.S.

312, 321 (1986).

Roberts claims that Brunelle used force approximately two hours after Roberts had been

found guilty of a false conduct violation.  He asserts that the use of force was "planned because

[he] filed a [Prison Rape Elimination Act complaint] against another inmate who was their

favorite worker.  And they hate Transgenders or anyone who's LGBTQ+."  Given Roberts's

allegations that the force was not applied by Brunelle to maintain or restore discipline, but rather as retribution, the Court concludes that Roberts's Eighth Amendment excessive-force claim against defendant Brunelle survives initial review.  Therefore, the Court orders the Clerk to issue process on Roberts's Eighth-Amendment excessive-force claim against Brunelle in his individual capacity.

### 2.    Conspiracy claims

Roberts also brings a conspiracy claim against defendants Hood, Brunelle, Womack, and Crass.  Roberts asserts that these officers "all had [Brunelle's alleged assault] planned because I filed a Prison Rape Elimination Act [complaint] against another inmate who was their favorite worker.  And they hate Transgenders or anyone who's LGBTQ+."

To allege a § 1983 conspiracy claim against a defendant, the plaintiff must show:  that the defendant conspired with others to deprive him of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff.  *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999).  Additionally, to prevail, the plaintiff must prove the deprivation of a constitutional right or privilege.  *Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017).  Allegations of conspiracy "must be pled with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir. 1988) (quoting *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (per curiam)).

Roberts provides no facts supporting the existence of a meeting of the minds or agreement among the defendants to violate Roberts's constitutional rights.  Roberts's bare assertion of a conspiracy state a § 1983 conspiracy claim.    Accordingly, the Court dismisses Roberts's conspiracy claims against defendants Hood, Brunelle, Womack, and Crass.

### 3.      Retaliation claims

Roberts alleges that he was subjected to two conduct violations at Southeast Correctional Center.  He asserts that he was given a conduct violation by defendants Reeves and Cross on August 7, 2021, for possessing a knife and drug paraphernalia.  Robert alleges that Reeves and Cross told him that they gave him the conduct violation because he filed a Prison Rape Elimination Act complaint.  Roberts also states that he was also given a conduct violation by defendant Robinson on May 18, 2022, for having medicine outside of his cell.  Roberts does not allege that Robinson's actions were retaliatory.

First-Amendment retaliation claims must include allegations that the plaintiff engaged in protected activity and that the defendant, in order to retaliate against the protected activity, took adverse action against plaintiff that would chill a person of ordinary firmness from engaging in that activity.  *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).  Inmates have the right to be free from retaliation for availing themselves of the grievance process.  *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *see also Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) ("[A]ctions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983.").

"[T]he First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures."  *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994) (citing *Sprouse v. Babcock*, 870 F.2d 450 (8th Cir. 1989)).  "Although the filing of a false disciplinary charge is not itself actionable under § 1983, the filing of a disciplinary charge becomes actionable if done in retaliation for the inmate's filing of a grievance."  *Id.*  An inmate need not show an independent injury apart from the false disciplinary charge.  *Id.*  "Because the

retaliatory filing of a disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself." *Id.*

Roberts has pleaded that Reeves and Crass gave him a conduct violation in retaliation for Roberts's filing of a grievance.  Therefore, the Court orders the Clerk to issue process on Roberts's claims for First-Amendment retaliation against defendants Reeves and Crass in their individual capacities.   The Court assumes that Roberts intended to assert a retaliation claim against defendant Robinson; however, as noted above, Roberts has not alleged that Robinson gave him a conduct violation for a retaliatory reason.  Accordingly, the Court dismisses the retaliation claim as to Robinson.

### 4.    Deliberate-indifference claims

Roberts alleges that he sought medical care on two separate occasions:  (1) on what appears to be the afternoon of August 7, 2021, after his altercation with Brunelle and (2) on September 28, 2021, when he asked Brunelle "for medical."

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).  To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237–38 (8th Cir. 1997).  To establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019).  In other words, whether a prison official has been "deliberately indifferent requires both an objective and a subjective analysis." *Hall v. Ramsey Cnty.*, 801 F.3d 912, 920 (8th Cir. 2015).

As to his first deliberate-indifference claim, Roberts fails to indicate who he asked for medical assistance from on the afternoon of August 7, 2021.  His failure to do so is fatal to his claim for relief because liability in a § 1983 case is personal.  *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017).Section 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights."  *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)).  To that end, a plaintiff must allege facts connecting a defendant to the challenged action.  *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).  Roberts's insistence that he was not offered medical care on the afternoon of August 7, 2021, without elaborating from whom he asked for such care, fails to state a claim.

The Court likewise concludes that Roberts's claim against Brunelle for allegedly failing to provide him medical care on September 28, 2021, also fails to state a deliberate-indifference claim.  Roberts states that he asked Brunelle "for medical," but he fails to allege what his medical symptoms were at the time he asked to see a nurse or doctor.  Under the Eighth Amendment, a "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).  Because Roberts does not allege what his medical needs were at the time he allegedly asked to see "medical," Roberts fails to state a claim.  For these reasons, the Court dismisses Roberts's deliberate-indifference claims.

### 5.      Conditions-of-confinement claims

Roberts alleges that he was subjected to a variety of unlawful conditions of confinement while incarcerated at SECC.  He claims that several defendants variously spit in his food, denied him meals, and verbally harassed him.

Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Prisoners are entitled to the basic necessities of human life and to humane treatment.  *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982).  To that end, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998).

To state an Eighth Amendment violation, a prisoner must allege that the defendant's conduct rose to the level of a constitutional violation "by depriving the plaintiff of the minimal civilized measure of life's necessities."  *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).  The constitutional question regarding prison conditions and confinement is whether the defendant "acted with deliberate indifference."  *Saylor v. Nebraska*, 812 F.3d 637, 643 (8th Cir. 2016).  A prison official is deliberately indifferent if he or she "knows of and disregards . . . a substantial risk to an inmate's health or safety."  *Id*. at 644.

The Eighth Amendment imposes a duty on officials to provide humane conditions of confinement, including ensuring that prisoners receive adequate food.  *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992).  However, the Constitution "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349.  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  "A plaintiff may demonstrate

violation of his constitutional rights by evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016).

Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing the prisoner only one meal per day for fifteen days did not violate the Eighth Amendment because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation). Thus, and while the Court in no way condones the alleged conduct, Roberts's allegations that Robinson took half of his meals on two separate occasions and that Crass once spit in his dinner tray do not state an Eighth Amendment claim.

Roberts also states that other correctional officers denied him food and spit in his food, but he has not indicated the factual underpinnings of these claims. Without such factual underpinnings, Roberts's allegations lack plausibility and fail to state a claim. *Iqbal*, 556 U.S. at 679.

Lastly, the Court considers Roberts's allegations that Brunelle and Robinson have verbally threatened and harassed him. A significant portion of Roberts's filings are devoted to describing unflattering and harassing remarks made by defendant Brunelle specifically. Roberts's filings are rife with statements that, on multiple occasions, Brunelle came to his cell and stood outside the door harassing him as retaliation against Roberts's alleged transgenderism and for filing Prison Rape Elimination Act complaints. Roberts also claims that Robinson acted similarly on several occasions.

13

"Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992); *see also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983.").  In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cnty.*, 117 F.3d 1065, 1067 (8th Cir. 1997) (citations omitted). To determine whether a verbal threat is actionable under § 1983, a court looks to whether it "caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015) (citing *Hopson*, 961 F.2d at 1378 (quotation omitted)).

Roberts has not articulated any comments from defendants rising to the level of a constitutional violation.  Put bluntly, verbal harassment and offensive comments do not give rise to a conditions-of-confinement claim under the Eighth Amendment.  *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987). Thus, and again without condoning the alleged comments or conduct, the Court dismisses Roberts's conditions-of-confinement claims.

### C.      Motion for leave to proceed in forma pauperis

Roberts previously filed a motion for leave to proceed in forma pauperis but later paid the full $402 filing fee.  Thus, the Court denies as moot Roberts's motion for leave to proceed in forma pauperis.

**D.       Motion to Transfer**

On May 26, 2022, Roberts filed a motion for transfer to a different facility.  Doc. 12.  He

claims that he has been "physically assaulted" and psychologically and verbally abused during

his incarceration at Southeast Correctional Center.  Roberts alleges that allowing him to stay at

Southeast Correctional Center during ongoing Prison Rape Elimination Act investigations is a

"conflict of interest," and it allows the same officers who purportedly engaged in discriminatory

behavior to keep inflicting harm upon him.

 The Court treats Roberts's request for transfer as a request for preliminary injunctive

relief.  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

*v. Nat. Res. Def. Council, Inc.*, 557 U.S. 7, 27 (2008).  To determine whether to grant a

preliminary injunction, a district court applies "a flexible consideration of (1) the threat of

irreparable harm to the moving party; (2) balancing this harm with any injury an injunction

would inflict on other interested parties; (3) the probability that the moving party would succeed

on the merits; and (4) the effect on the public interest."  *St. Louis Effort for AIDS v. Huff*, 782

F.3d 1016, 1021 (8th Cir. 2015); *see also Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109,

113 (8th Cir. 1981).  "None of these factors by itself is determinative; rather, in each case the

four factors must be balanced to determine whether they tilt toward or away from granting a

preliminary injunction."  *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir.

1986).

In the prison context, the Court must view a request for injunctive relief with great

caution because "judicial restraint is especially called for in dealing with the complex and

intractable problems of prison administration."  *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995).

For an injunction to issue, "a right must be violated" and the court must determine whether "a

cognizable danger of future violation exists." *Id*. at 521.  Furthermore, the "danger must be more

than a mere possibility." *Id*.  Regarding the issue of whether a situation is ripe for injunctive

relief, the Eighth Circuit has noted that courts "should not get involved unless either a

constitutional violation has already occurred or the threat of such a violation is both real and

immediate." *Id*.  Roberts has the burden of proving that an injunction should be issued.  *See*

*Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

Roberts fails to establish that he is likely to suffer irreparable harm without injunctive

relief.  First, though Roberts bears the burden of establishing his entitlement to an injunction, he

provides the Court no evidence.  Even his motion for transfer—which he labels a "sworn

affidavit"—has not been signed under penalty of perjury.  Second, even assuming Roberts's

submission counts as evidence, he brings to the Court only generalized fear of some speculative,

future harm.  Doc. 12 at p. 2 ("I am afraid they will intentionally set me up with some type of

Conduct Violation that could possibly get me another sentence.").  Thus, the Court denies the

motion.

### E.     Instructions for service-of-process

Because Roberts paid the full filing fee, he must effectuate service of process on

defendants Brunelle, Reeves, and Crass.  Roberts must serve defendants with a summons in

accordance with Federal Rule of Civil Procedure 4.  The Court instructs the Clerk to send

Roberts three file-stamped copies of his first amended complaint and supplements, Docs. 3, 13,

15, as well as summonses.  To effectuate service, Roberts must either hire a private process

server or have someone over the age of 18 who is not a party to this lawsuit personally deliver

the appropriate summons and his first amended complaint and supplements to the defendants.

Alternatively, Roberts may serve the defendants in accordance with Missouri law. Roberts must record returns of service and file them with the Court no later than December 1, 2022.

## IV.    Conclusion

Because Roberts has paid the full, $402 filing fee, the Court denies as moot his [4] motion for leave to proceed in forma pauperis. The Court orders the Clerk to issue process on Roberts's first amended complaint as to defendants Brunelle, Unknown Reeves, and Unknown Crass in their individual capacities and further orders the Clerk to send Roberts three file-stamped copies of his first amended complaint and the two supplements, as well as appropriate summonses. Because Roberts paid the filing fee in this case, he must effectuate service on these defendants. No later than December 1, 2022, Roberts must serve process on defendants Brunelle, Unknown Reeves, and Unknown Crass and file return-of-process with the Court. If Roberts fails to serve these defendants within the time set by the Court, the Court will, without further notice, dismiss this case without prejudice. *See* Fed. R. Civ. P. 4(m). Pursuant to 42 U.S.C. § 1997e(g)(2), defendants Brunelle, Unknown Reeves, and Unknown Crass must reply to Roberts's excessive-force and First-Amendment-retaliation claims within the time provided by Federal Rule of Civil Procedure 12(a).

For the reasons stated in this order, the Court dismisses Roberts's claims against defendants SECC Department of Corrections, Unknown Hood, Unknown Womack, Unknown Maron, and Unknown Robinson. The Court likewise dismisses Roberts's conspiracy-to-commit-excessive-force claims, his deliberate-indifference claims, as well as his conditions-of-confinement claims. The Court denies Roberts's [12] motion to transfer and denies without prejudice his [14] motion for appointment of counsel. Finally, the Court certifies that an appeal

17

from this memorandum and order would not be taken in good faith.  A separate, partial order of

dismissal accompanies this memorandum and order.

So Ordered this 2nd day of September 2022.

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE